IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **JEROME WILLIAMS** | § | |
| **a/k/a ED WILLIAMS** | § | |
| | § | |
| **V.** | § | A-09-CA-137-LY |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Dept. of** | § | |
| **Criminal Justice-Correctional** | § | |
| **Institutions Division**[1] | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 11); and Petitioner's response thereto (Document 13). Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

---

[1] The previous named respondent in this action was Nathaniel Quarterman. On July 15, 2009, Rick Thaler succeeded Quarterman as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Thaler is automatically substituted as a party.

**STATEMENT OF THE CASE**

A.   **Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 421st Judicial District Court of Caldwell County, Texas in cause number 2005-156. Petitioner was indicted by a grand jury for two counts of aggravated kidnapping alleged to have been committed on or about May 17, 2005. The indictment also alleged that Petitioner used a deadly weapon, a firearm, in the commission of the two offenses. Petitioner pleaded not guilty to the charged offenses, and on January 12, 2006, a jury found him guilty of both counts of aggravated kidnapping, made affirmative deadly weapon findings, and recommended a sentence of 20 years incarceration on the first count and 50 years incarceration on the second count.

Petitioner's convictions and sentences were affirmed on July 5, 2007. Williams v. State, No. 13-06-00220-CR, 2007 WL 1934764 (Tex. App. – Corpus Christi 2007, pet. ref'd). Petitioner initially missed the deadline for filing a petition for discretionary review ("PDR"), because his appellate attorney failed to alert him to the right to file a PDR. As a result, Petitioner was granted permission to file an out-of-time PDR after he filed a state application for habeas corpus relief. Ex parte Williams, Appl. No. 70,027-02, 2008 WL 2514754 (Tex. Crim. App. June 25, 2008). The Texas Court of Criminal Appeals refused the PDR on October 29, 2008. Williams v. State, PD-1023-08.

Petitioner also challenged his conviction in a second state application for habeas corpus relief. On February 4, 2009, the Texas Court of Criminal Appeals denied the application without written order. Ex parte Williams, Appl. No. 70,027-03.

B.  **Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

> Tracy Nieto and Chrystal Gonzales testified that on May 17, 2005, they, along with George Williams (hereafter "Williams"), Damoine King, and appellant, were outside Williams's house in Luling, Texas. Williams and Nieto were arguing about stolen drugs or money. The group went inside the house where appellant grabbed a gun and gave it to Williams. Williams waved the gun around and put it to Nieto's forehead while appellant and King told Williams that he needed to make an example out of Nieto. They then went outside the house, and appellant told Williams to put Nieto and Gonzales in the trunk of Williams's car. Williams told Nieto and Gonzales to get in the trunk. Both Williams and appellant alternatively had possession of the gun while locking Nieto and Gonzales in the trunk. Appellant locked them inside. While in the trunk, Nieto and Gonzales heard the three men discussing where to take them, what to do with them, and what to do with Nieto's vehicle in order to dispose of the evidence.
>
> The men finally released Nieto so that she could retrieve the money or drugs that Williams had previously accused her of taking. Gonzales remained in the custody of the three men as a guarantee that Nieto would return. Nieto, however, called the police.

Williams v. State, No. 13-06-00220-CR, 2007 WL 1934764, at *1 (Tex. App. – Corpus Christi 2007, pet. ref'd).

C.  **Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1.  The trial court abused its discretion by failing to provide the jury with a lesser-included offense instruction;

2.  He was denied the effective assistance of appellate counsel because the issue of the sufficiency of the evidence was not briefed;

3.  There was a conflict of interest between appellate counsel and Petitioner, because at the time appellate counsel was drafting Petitioner's brief he was also representing Petitioner's co-defendants at trial; and

    4.      Trial counsel was ineffective for coercing Petitioner into testifying, when counsel should have realized that Petitioner had prior convictions, which would be used to impeach his testimony.

**D.**  **Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

## DISCUSSION AND ANALYSIS

**A.**  **The Antiterrorism and Effective Death Penalty Act of 1996**

The AEDPA radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254. Under the AEDPA's standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)). The inquiry into whether the decision was based on an "unreasonable

determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court.  See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  See 28 U.S.C. § 2254(e)(1).  While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence.  See id.  Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings.  See id. § 2254(d)(2). With these principles in mind, this Court must now turn to the issues raised by the pleadings in this cause.

**B.      Lesser Included Offense**

In his first ground for relief, Petitioner argues that the trial court erred because it refused to charge the jury on the lesser-included offense of unlawful restraint.  Petitioner's allegation does not state a ground for federal habeas corpus relief.  "In a non-capital murder case, the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue." Valles v. Lynaugh, 835 F.2d 126, 127 (5th Cir. 1988); Alexander v. McCotter, 775 F.2d 595, 601 (5th Cir. 1985).  Accordingly, Petitioner's claim does not warrant federal habeas corpus relief.

### C. Ineffective Assistance of Trial Counsel

Petitioner also argues that he was denied effective assistance of trial counsel. Specifically, Petitioner asserts his trial counsel coerced him to testify even though Petitioner had prior convictions, which could be used to impeach him.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. Id. at 686-689, 104 S. Ct. 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S. Ct. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97, 104

S. Ct. at 2069. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687, 104 S. Ct. at 2064.

With regard to Petitioner's first state application for habeas corpus relief trial counsel, Richard Jones, provided his affidavit in which he explained Petitioner's testimony was necessary in his case, because "it was a he said, she said sort of case." Ex parte Williams, Appl. No. 70,027-02 at 61. According to Jones, Petitioner agreed with this trial strategy. Id. Jones attests:

> Mr. Williams and I met on at least three separate [occasions] so that I could prepare him to take the stand. Not once did he tell me that he did not want to take the stand. I told him in general what the state would likely ask him. There was no possible way to guess exactly what questions that the opposing party was going to ask. I told him to answer questions with yes or no answers and not to volunteer any information.
>
> I told him that they would ask him about his criminal history. I told him to admit his felony conviction if questioned about it and that if he admitted to the conviction that the state would not be able to delve into details. I told him that if he argued about the conviction that the state would be able to go into the conviction with much more detail. It has been my experience that juries can separate out non-relevant criminal history. In fact the jury acquitted Mr. Williams of the charge of felon in possession of a firearm despite knowing that he was a self admitted felon. If his criminal history had been so prejudicial, the jury would not have acquitted him of that charge.
>
> . . . Mr. Williams knew what to expect, he was properly prepared, the jury did not convict him because of his prior record and counsel was not ineffective. In the end, Mr. Williams was convicted because the jury simply did not believe the story he told [that he was asleep when the kidnap victims arrived or fell asleep shortly after they arrived and did not know what transpired].

Id. at 61-62.

The trial court concluded Petitioner's claim was without merit and noted Petitioner's allegations regarding trial counsel was strongly rebutted by counsel. Id. at 66. The Texas Court of

Criminal Appeals dismissed Petitioner's claim, as the court granted Petitioner permission to file an out-of-time PDR. Petitioner raised the same ineffective assistance claim in his second application for habeas corpus relief. The same trial judge found there were no controverted, previously unresolved issues of fact material to the legality of the petitioner's confinement and directed the clerk of the court to transmit the file to the Texas Court of Criminal Appeals. Ex parte Williams, Appl. No. 70,027-03 at 43. The Texas Court of Criminal Appeals denied Petitioner's second application without written order. Id. at cover.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. If counsel has made an adequate investigation, an informed decision made based on trial strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." United States v. Cotton, 343 F.3d 746, 753(5th Cir. 2003), cert. denied, 540 U.S. 11865 (2004) (quoting United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002); Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002). The record shows that counsel advised Petitioner to testify, because that was the only evidence of his alleged innocence. This advice was based on trial strategy, and Petitioner has not shown that trial counsel's decision was so poorly chosen that it permeated the entire trial with obvious unfairness. Moreover, Petitioner has failed to show any prejudice. Petitioner claimed his innocence. The only person who could testify to this was Petitioner himself. Petitioner exercised his constitutional right to testify, and defense counsel was not ineffective for failing to advise him otherwise. Petitioner has not shown that had he been advised not to testify and chosen not to do so, there is a reasonable probability that he would not have been

convicted because the jury would then have never heard his version of events at all. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

**D.       Ineffective Assistance of Appellate Counsel**

In another ground for relief Petitioner argues appellate counsel was ineffective because he failed to challenge on appeal the sufficiency of the evidence. Petitioner explains he was convicted of aggravated kidnapping, but the jury found Petitioner was not guilty of possessing, using or exhibiting a firearm. Petitioner claims his two co-defendants committed the alleged offenses, as evidenced by their convictions, and the jury charge in Petitioner's case did not apply the law of parties.

A criminal defendant has a constitutional right to effective assistance of counsel in his first appeal as of right. Hughes v. Booker, 203 F.3d 894, 896 (5th Cir. 2000) (citing Evitts v. Lucey, 469 U.S. 387, 293-95, 105 S. Ct. 830, 834 (1985)). Where a petitioner argues that counsel failed to assert or fully brief a particular claim, he must show that his attorney's performance was both deficient and prejudicial. Id. (citing Penson v. Ohio, 488 U.S. at 84, 109 S. Ct. at 352-54 (citing Strickland v. Washington, 466 U.S. 668, 689-94, 104 S. Ct. 2052, 2065-67 (1984))). Appellate counsel is not ineffective because he failed to raise the issues presented by the defendant or because he failed to raise every possible point on appeal. Sharp v. Puckett, 930 F.2d 450, 452 (5th Cir. 1991).

The standard for testing the sufficiency of evidence in a federal habeas review of a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). The evidence need not exclude

9

every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. United States v. Leahy, 82 F.3d 624, 633 (5th Cir. 1996).

Counsel was not ineffective for failing to challenge the sufficiency of the evidence in Petitioner's case. Petitioner mistakenly argues that the jury in his case was not charged with regard to the law of parties. The charge in Petitioner's case clearly states:

> A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.
>
> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.
>
> In a prosecution in which a Defendant's criminal responsibility is based on the conduct of another, the Defendant may be convicted on proof of commission of the offense and that he was party to its commission, and it is no defense:
>
> (a)  that the Defendant belongs to a class of persons that by definition of the offense is legally incapable of committing the offense in an individual capacity; or
>
> (b)  that the person for whose conduct the Defendant is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or of a different type of class of offense, or is immune from prosecution.

Mere presence alone will not constitute one a party to an offense.

Tr. at 59. The jury was further charged:

> Now, bearing in mind the foregoing instructions, if you believe from the evidence, beyond a reasonable doubt, that the Defendant, Jerome Williams a/k/a Ed Williams, on or about May 17, 2005, in Caldwell County, Texas, did then and there intentionally or knowingly abduct another person, to-wit: Traci Nieto, and the Defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, or

> if you believe, beyond a reasonable doubt, that the Defendant, Jerome Williams a/k/a Ed Williams, on said date, in said County and State, acting as a party, as that term has been herein defined, with intent to promote or assist the commission of said offense, did then and there encourage, direct, aid, or attempt to aid George Williams in the commission of the offense, to wit: the Defendant did then and there say to kill Traci Nieto, or provide George Williams with a firearm or close Traci Nieto in the trunk of an automobile, and you find that a firearm was used or exhibited by any person, you will find the Defendant guilty of Aggravated Kidnapping as alleged in Count 1 of the indictment, and so say by your verdict . . . .

Tr. at 61.  The jury was similarly charged with respect to Count 2.  Tr. at 62.

The evidence at trial, viewing the evidence in the light most favorable to the prosecution, shows George Williams threatened the victims with a gun, and Petitioner encouraged him to kill the victims and locked them in the trunk.  Accordingly, the evidence was sufficient to support his convictions, and counsel was not ineffective for failing to challenge the sufficiency of the evidence on appeal.  In addition, Petitioner has not shown that he was prejudiced by counsel's failure to raise such claim.  Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, Petitioner's claim does not warrant federal habeas relief.

**E.     Conflict of Interest**

Petitioner argues appellate counsel performed under a conflict of interest, because he was also representing Petitioner's co-defendants at the time he was drafting Petitioner's appellate brief.  On state habeas review for Petitioner's first state application appellate counsel, James McManus, provided the court with an affidavit and a supplemental affidavit.  Counsel admitted, in addition to representing Petitioner on appeal, he also represented George Williams.  <u>Ex parte Williams</u>, Appl.

No. 70,027-02 at 56, 58.  He denied representing the third defendant, Damoine King.  Id.  Counsel attests in his original affidavit:

> I apprised Defendant of possible conflicts of interest, if any, that were present or could surface during the course of time before being retained as his attorney on appeal.  I will further state that it was the Defendant who asked that I be his attorney on appeal.

Id. at 55-56.  In his supplemental affidavit counsel attests:

> After Jerome Williams was convicted in 2006, I was asked to represent him on appeal.  At this moment in time, George Williams still had not been tried and Damon [sic] King had not entered into an allocution agreement with the State.  Damon [sic] King did not testify against his co[-]defendant Jerome Williams, but did subsequently testify against defendant George Williams.  I made a determination, after review of the trial record of Jerome Williams that the only point of error that could possibly be raised on appeal was failure of the court to grant a charge on the lesser included offenses.  Jerome Williams['s] testimony was in accordance with the statements that he expressed to me in 2005 when I interviewed him as a potential witness in the case against George Williams.  Jerome Williams['s] testimony according to the court records is that he was never present at the scene of the crime.  He was asleep inside the house.
>
> I was not burdened by a conflict of interest between representing Jerome Williams on appeal and trial preparation for George Williams.  Jerome Williams [sic] brief on appeal was filed before trial commenced for George Williams.  George Williams did not testify at his trial.  That determination not to testify was made before I agreed to accept representation of Jerome Williams on appeal.  There were no choices to make that would advance the interest of one client to the detriment of the other vis a vis the trial of George Williams or the appeal of Jerome Williams.
>
> I am not aware of any direct fact that raises a conflict of interest, or a perception of a conflict of interest, that affected the effectiveness or adequacy of my representation of George Williams and Jerome Williams.

Id. at 59-60.

The state habeas court found there was no conflict of interest.  Id. at 66.  Alternatively, the court found Petitioner clearly was aware of the possibility and insisted on retaining Mr. McManus to represent him.  Id.  The trial court further found that Petitioner waived any argument regarding

a conflict and had shown no injury flowing therefrom. Id. The court concluded Petitioner's claim was without merit. Id. The Texas Court of Criminal Appeals dismissed Petitioner's claim, as the court granted Petitioner permission to file an out-of-time PDR. Petitioner raised the same ineffective assistance claim in his second application for habeas corpus relief. The same trial judge found there were no controverted, previously unresolved issues of fact material to the legality of the petitioner's confinement and directed the clerk of the court to transmit the file to the Texas Court of Criminal Appeals. Ex parte Williams, Appl. No. 70,027-03 at 43. The Texas Court of Criminal Appeals denied Petitioner's second application without written order. Id. at cover.

The role of this Court is to determine whether or not the Texas Court of Criminal Appeals' decision involved an unreasonable application of clearly established Federal law to the facts of Petitioner's case. The leading federal case is Cuyler v. Sullivan, 446 U.S. 335, 345-46, 100 S. Ct. 1708 (1980). In Cuyler, the United States Supreme Court held that a party who raised no objection at trial may obtain habeas corpus relief by demonstrating that his counsel represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance. Such representation constitutes ineffective assistance of counsel and violates the Sixth Amendment. Although no prejudice need be shown if an actual conflict of interest is found to exist, the petitioner must demonstrate that the conflict is actual, not speculative. Id. at 348.

The Court in Cuyler held that trial courts are not required to initiate inquiries into the propriety of multiple representation in every case, as defense counsel have ethical obligations to avoid conflicting representation. Id. at 346-47. Therefore, when no objection is made, and "absent special circumstances," the courts may assume that either the representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. Id. See also

United States v. Placente, 81 F.3d 555, 559 (5th Cir.1996) (when no objection is made at trial, defendant must show that an actual conflict of interest adversely affected counsel's performance); Perillo v. Johnson, 205 F.3d 775, 781 (5th Cir. 2000) (defendant must prove attorney was "compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interest of a former or current client."). "An actual conflict exists if 'counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing.'" United States v. Lyons, 703 F.2d 815, 820-21 (5th Cir. 1983) (quoting Baty v. Balkcom, 661 F.2d 391, 395 (5th Cir. 1981), cert. denied, 456 U.S. 1011, 102 S. Ct. 2307 (1982)).

In this case, Petitioner failed to show there was an actual conflict of interest. There is no evidence that Petitioner's appellate counsel placed his other client's interests above Petitioner's. There is also no evidence that counsel ignored meritorious arguments in order to further the trial of counsel's other client. For these reasons, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence regarding Petitioner's conflict of interest claim.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective

December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

**OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 1st day of June, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE